IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-033

Filing Date: August 24, 2012

Docket No. 32,828

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.

DAVID HAIDLE,

    Defendant-Appellant.

INTERLOCUTORY APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
William A. Sanchez, District Judge

Jacqueline L. Cooper, Chief Public Defender
Jeffrey J. Buckels, Assistant Public Defender
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

OPINION

DANIELS, Justice.

{1}     In this case, we address the use of multiple levels of anonymous hearsay reports in the probable cause portion of a search warrant affidavit. We granted Defendant David Haidle's application for interlocutory appeal to review the district court's partial denial of his motion to suppress evidence obtained at his home through execution of a magistrate court search warrant. The district court found that the warrant was issued without constitutionally adequate probable cause but refused to suppress pieces of blood-stained carpet on the theory

1

that the carpet inevitably would have been discovered in a potential future search. We affirm the district court's determination that the search warrant was invalid, but we reverse the ruling that the inevitable discovery doctrine would make the unlawfully seized carpet evidence admissible.

## I.    BACKGROUND

{2}    On January 19, 2009, the decomposed body of Tiffany Lauer-Ventura was found dumped in a remote area near Los Lunas. The medical examiner determined that she was killed by violent blunt-force trauma to the head. According to the detectives investigating her death, Victim was a local transient and narcotics user with an extensive history of stealing from those who had invited her into their homes or confidence.

{3}    On January 30, 2009, a New Mexico State Police detective interviewed Defendant in connection with Victim's death. During the interview, Defendant admitted that he knew Victim, that he periodically hired her to do work for him, and that on at least three occasions he had paid her to have sex with him in his bathroom. Defendant also told the detective that Victim stole some of his tools and other property.

{4}    On November 5 and 6, 2009, the detective received tips "from a confidential source and two concerned citizens that [Defendant] had admitted to at least one person that he had killed [Victim] for stealing from him." On November 6, the police returned to Defendant's home and interviewed him again. In response to questioning, Defendant denied he was involved in Victim's death but admitted that her bodily fluids "may possibly be on his bed, bathroom, bathtub or couch" and specifically that her blood could be in his bathroom where she had injected heroin. Defendant agreed to let the police take an aluminum baseball bat, which Defendant said he kept in his bedroom for personal protection. He referred to the bat, along with his attack-trained Rottweilers, as his "weapons of choice."

{5}    On November 9, 2009, police submitted a search warrant affidavit containing this information to a magistrate judge and obtained a warrant to search Defendant's home and truck. During execution of the warrant, detectives took from the truck a bloody T-shirt that appeared too small for Defendant, and they removed from his living room a piece of carpet containing bloodstains that someone apparently had tried to clean following the November 6 visit by the investigating officers. Based on these discoveries, police obtained a second warrant to procure a sample of Defendant's DNA. After the blood on the carpet was matched to Victim, Defendant was arrested and charged with first-degree murder in violation of NMSA 1978, Section 30-2-1(A)(1) (1994) and tampering with evidence in violation of NMSA 1978, Section 30-22-5 (2003).

{6}    Defendant moved the district court to suppress all evidence obtained as fruit of the November 9 search warrant, arguing that the affidavit failed to establish probable cause, as required by both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. In a written response, the State conceded that

the affidavit failed to establish probable cause but argued that the court should deny the motion because (1) the officers were acting in good faith; (2) they had additional information regarding the hearsay that they could have included in the affidavit to make it sufficient; (3) the issuing judge was at fault for not rejecting the legally inadequate warrant application and having the officers prepare a lawful substitute; and (4) the inevitable discovery doctrine should therefore justify denial of the motion to suppress. The district court granted Defendant's motion to suppress in part, agreeing with both parties that the warrant lacked probable cause, but exempted the carpet evidence from the suppression order under the inevitable discovery exception to the exclusionary rule.

{7}     We granted Defendant's application for interlocutory appeal to review the district court's partial denial of Defendant's suppression motion as to the carpet. We have jurisdiction to hear Defendant's appeal under NMSA 1978, Section 39-3-3(A)(3) (1972), *interpreted by State v. Smallwood*, 2007-NMSC-005, ¶ 10, 141 N.M. 178, 152 P.3d 821 (holding that this Court has "jurisdiction over a criminal defendant's interlocutory appeal in cases where a sentence of life imprisonment or death *could be* imposed").

{8}     In an unusual reversal of legal theories, the State has abandoned both its concession below that the affidavit failed to establish probable cause and its inevitable discovery doctrine argument below that provided the basis for the district court's partial denial of Defendant's suppression motion. Instead, the State now relies on the "right for any reason" doctrine to argue that the suppression ruling should be affirmed on the theory that the affidavit was supported by probable cause, notwithstanding the State's concession to the contrary in the district court. *See Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 13, 134 N.M. 308, 76 P.3d 626 ("[A]n appellate court will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant." (internal quotation marks and citation omitted)).

## II.     THE AFFIDAVIT DID NOT ESTABLISH PROBABLE CAUSE

{9}     Because an inevitable discovery analysis is unnecessary unless we first determine that a search was not lawful, we address the State's argument on appeal that the district court's refusal to suppress the carpet evidence should be upheld on the theory that the affidavit provided probable cause for issuance of the November 9 warrant. For the reasons that follow, we agree with both the district court and the prosecutor below in our determination that the affidavit lacked constitutionally adequate probable cause.

### A.     Standards of Review for a Search Warrant

{10}     Before addressing the specific arguments in this case, we set out the controlling principles under New Mexico law for judicial review of probable cause for a search warrant. As we recently confirmed in *State v. Williamson*, the issuance of a search warrant is reviewed under a substantial basis standard. 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376 ("A reviewing court should not substitute its judgment for that of the issuing court

. . . [but] must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing.") "[T]he substantial basis standard is not tantamount to rubber-stamping the decision of the issuing court and does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause." *Id.* ¶ 30. Rather, "the substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* "This review is limited to the contents of the affidavit." *State v. Nyce*, 2006-NMSC-026, ¶ 8, 139 N.M. 647, 137 P.3d 587, *overruled on other grounds by Williamson*, 2009-NMSC-039, ¶ 29 & n.1 (disavowing the de novo standard of review of probable cause for searches conducted pursuant to a warrant).

**{11}** "The Fourth Amendment to the United States Constitution and [A]rticle II, [S]ection 10 of the New Mexico Constitution both require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue." *Williamson*, 2009-NMSC-039, ¶ 14 (alterations in original) (internal quotation marks and citation omitted). *See* Rule 5-211 (A)(4) ("A warrant shall issue only on a sworn written statement of the facts showing probable cause for issuing the warrant."). "Probable cause exists when there are reasonable grounds to believe an offense has been or is being committed in the place to be searched." *Nyce*, 2006-NMSC-026, ¶ 10. "Probable cause must be based on substantial evidence." *State v. Snedeker*, 99 N.M. 286, 290, 657 P.2d 613, 617 (1982); *accord* Rule 5-211(E) NMRA ("'[P]robable cause' shall be based upon substantial evidence.").

**{12}** "[W]hen an application for a search warrant is based on an affidavit, the affidavit must contain sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause. Mere affirmance of belief or suspicion [by the affiant] is not enough." *Williamson*, 2009-NMSC-039, ¶ 30 (second alteration in original) (internal quotation marks and citation omitted). "If, after reviewing the affidavit as a whole, the direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations, does not support the issuing court's determination of probable cause, then the search is invalid and unreasonable." *Id.* (internal quotation marks and citations omitted). If the search warrant is invalid, then the evidence seized as a result of the search must be suppressed. *See State v. Gutierrez*, 116 N.M. 431, 432, 447, 863 P.2d 1052, 1053, 1068 (1993) (concluding that evidence seized as the result of an invalid warrant must be suppressed).

**{13}** "[W]hile we give deference to a magistrate's decision, and to an officer's observations, experience, and training, their conclusions must be objectively reasonable under all the circumstances." *Nyce*, 2006-NMSC-026, ¶ 11. "The presence of objective reasonableness is especially important when dealing with the search of a home." *Id.* ¶ 12. "The privacy of a home is afforded the highest level of protection by our state and federal constitutions." *Id.* "Therefore, we give due weight to the fact that it is a home to be

4

searched and its privacy invaded when we consider the objective reasonableness of a magistrate's warrant based on probable cause." *Id.*

**{14}** With these established guidelines in mind, we turn to an analysis of the affidavit upon which the November 9 warrant was issued.

## B.     The Affidavit's Hearsay Content

**{15}** The affidavit contains both hearsay information from unnamed informants and nonhearsay evidence gathered independently by police. We begin by evaluating the significantly incriminating hearsay content. *See State v. Cordova*, 109 N.M. 211, 213-15, 217, 784 P.2d 30, 32-34, 36 (1989) (analyzing first the sufficiency of the hearsay content and then any facts corroborated by the police in a search warrant affidavit that contained both).

**{16}** The hearsay portion of the affidavit states that over the course of two days, the police received information "from a confidential source and two concerned citizens that [Defendant] had admitted to at least one person that he had killed [Victim] for stealing from him" and that "[Defendant] had admitted to the killing prior to the discovery of [Victim's] body." Although in response to Defendant's suppression motion the State offered to submit additional background facts relating to the conclusory allegations in the affidavit, our "review is limited to the contents of the affidavit." *See Nyce*, 2006-NMSC-026, ¶ 8. This is necessarily so in light of the explicit command in our New Mexico Bill of Rights that "no warrant to search any place" may issue "without a *written* showing of probable cause." N.M. Const. art. II, § 10 (emphasis added).

**{17}** Rule 5-211(E) NMRA provides that when a showing of probable cause depends in whole or in part on hearsay information, the affidavit must show "a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." As we explicitly recognized in *Cordova*, the components of this two-pronged test, often referred to as the "veracity" (or "credibility") and "basis of knowledge" (or "factual basis") requirements for evaluating information from hearsay sources, "effectuate the principles behind Article II, Section 10, of the New Mexico Constitution." 109 N.M. at 217, 784 P.2d at 36 (adopting the two-prong test from *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), and rejecting the totality of circumstances test in *Illinois v. Gates*, 462 U.S. 213 (1983)).

**{18}** This case is complicated by the fact that the affidavit indicates multiple levels of hearsay from unidentified sources. Regardless of how the sources who spoke to the detective may have learned of their hearsay information that Defendant admitted to killing Victim, these sources are not alleged to have heard Defendant's incriminating admission directly. We therefore must conduct a two-prong analysis as to each representation made by each hearsay source, recognizing that more than one level of hearsay can support a search warrant affidavit provided each source meets both the veracity and basis of knowledge tests. *See State v. Perea*, 85 N.M. 505, 509, 513 P.2d 1287, 1291 (Ct. App. 1973) (applying the

5

veracity and basis of knowledge test to double hearsay); *see also Cordova*, 109 N.M. at 213, 784 P.2d at 32 (citing *Perea*, 85 N.M. at 509, 513 P.2d at 1291, for "applying [the *Aguilar* and *Spinelli*] test to [a] 'double hearsay' problem"). For clarity, we will refer to the sources who spoke to the detectives—the "confidential source" and the two "concerned citizens"—as level one sources, to the person or persons whom Defendant purportedly told that he killed Victim—to the extent they may have told anyone in the hearsay chain any account of those conversations—as level three sources, and to any sources relaying information between level three and level one as level two sources. We must determine whether the affidavit sets forth a substantial basis for independently reviewing all the levels of hearsay through which Defendant's statement or statements allegedly traveled.

**{19}** Under the first prong of the test, relating to a hearsay source's veracity, we ask whether the affidavit provides a "substantial basis for believing the informant," *Cordova*, 109 N.M. at 214, 784 P.2d at 33; *accord* Rule 5-211(E) (A search warrant affidavit must contain "a substantial basis for believing the source of the hearsay to be credible."). We have recognized a number of ways in which an affidavit may demonstrate a source's veracity, such as where a source has provided police with reliable information in the past, *see Cordova*, 109 N.M. at 213 n.2, 217-218, 784 P.2d at 33 n.2, 36-37, or where an informant's tip "constitutes an admission that the informant was involved in illegal activity," *id.* at 213 n.2, 784 P.2d at 33 n.2.

**{20}** The affidavit in this case fails to provide any basis for a judicial determination of the veracity of any of the various level one, level two, or level three hearsay sources with respect to Defendant's purported admission that "he had killed [Victim] for stealing from him." Mere allegations that a source is a "confidential source" or a "concerned citizen" are inadequate. *See State v. Baca*, 97 N.M. 379, 381, 640 P.2d 485, 487 (1982) (noting that even where hearsay information is from a confidential informant, there must be "sufficient underlying circumstances in the affidavit from which the judge could conclude that the informant is credible"); *see also Cordova*, 109 N.M. at 217, 784 P.2d at 36 (concluding that police corroboration in past cases of information supplied by a "confidential informant" was a marginally sufficient showing of credibility); *In re Shon Daniel K.*, 1998-NMCA-069, ¶ 13, 125 N.M. 219, 959 P.2d 553 (holding that "a generic recitation that an individual is a 'citizen-informant' is insufficient to raise an inference that the informant is credible" in the absence of specific corroborating facts about the source's truthfulness). While we do not disagree with the State's general reliance on *State v. Contreras*, 2003-NMCA-129, ¶ 10, 134 N.M. 503, 79 P.3d 1111, for the proposition that a citizen informant can be regarded as more reliable because "citizens presumably have nothing to gain by fabrication" (internal quotation marks and citation omitted), we disagree that merely asserting that an anonymous informant is a "concerned citizen" automatically bestows credibility. In *Contreras*, a concerned motorist called 911 to report a possible drunk driver. *Id.* ¶ 2. Based on the circumstances of that call, the *Contreras* Court determined that the concerned informant's eyewitness account met the credibility and reliability hearsay requirements. *Id.* ¶¶ 12, 21. In this case, unlike *Contreras*, the affidavit merely concludes that two sources are concerned citizens, with no further explanation. These types of conclusory statements fail because they

6

do not provide the context needed for an issuing magistrate to make an informed and deliberate determination of probable cause. *See Cordova*, 109 N.M. at 213, 784 P.2d at 32.

**{21}** The affidavit does not indicate that any of the sources at any level had provided reliable information to police in the past, as in *State v. Cervantes*, 92 N.M. 643, 647, 593 P.2d 478, 482 (Ct. App. 1979). There are no indicia that sources at any level made statements against their interests, as in *Perea,* 85 N.M. at 509, 513 P.2d at 1291. And there is no information to discount that the sources at any level might themselves have been involved in the killing or might have had any other reason to fabricate the story. There is simply no information in the affidavit that would provide a principled basis for any reasoned judicial determination that the unnamed hearsay sources should be considered trustworthy or knowledgeable. *See Cordova*, 109 N.M. at 213, 784 P.2d at 32. ("The constitutionally mandated role of magistrates and judges in the warrant process requires them to make 'an informed and deliberate' determination whether probable cause exists.").

**{22}** Because both the veracity of the hearsay sources and the reliability of their information must be established under New Mexico law, the failure of the veracity showing alone is sufficient to negate probable cause. But this affidavit fails to satisfy the basis of knowledge prong as well.

**{23}** Under the "basis of knowledge" prong of the test, we ask whether the affidavit provides a "substantial basis for concluding the informant[s] gathered the information of illegal activity in a reliable fashion." *Id.*, 109 N.M. at 214, 784 P.2d at 33; *accord* Rule 5-211(E) (probable cause based on hearsay also requires "a substantial basis . . . for believing that there is a factual basis for the information furnished").

**{24}** Nothing in the affidavit indicates how any of the various levels of hearsay sources came to the belief that Defendant "had admitted to at least one person" that he had committed the killing. The affidavit does not represent that any of the level one sources was a level three source to whom Defendant supposedly made the admission or even that the level one sources received their accounts directly from a level three source. Nor is there any indication of how many layers of level two sources lay between the level one sources and the level three sources whom Defendant is alleged to have directly informed. In fact, there is nothing to establish that the story was not created at some level with supposition, inference, or unsupported hunch or transmitted from one hearsay source to another by unfounded rumor.

**{25}** The State argues on appeal that the magistrate could have determined that the informants were credible and their information reliable because the police had corroborated their information through Defendant's statements to them. This Court has recognized that "police corroboration may compensate for an inability to demonstrate that an anonymous tip was from a credible source, and a detailed description may compensate for an inability to show the anonymous informant's basis of knowledge." *Cordova*, 109 N.M. at 215 n.6, 784 P.2d at 34 n.6. Thus, we have found an informant credible when critical details that are not

widely known or easily discoverable by the public have been independently corroborated. For example, in *State v. Jones*, an anonymous citizen informant told police that a suspect possessed controlled narcotics and that the suspect had bragged about burglarizing three pharmacies by twice entering through roofs and once entering through a window. 96 N.M. 14, 15, 627 P.2d 409, 410 (1981). Police corroborated the information by checking police records, which revealed that three recent unsolved pharmacy burglaries had been committed in exactly the manner described by the informant and that the information about the method in which the burglaries occurred had not been released to the public. *Id.* at 15-16, 627 P.2d at 411-12. "The informant's credibility was thus established by his unique knowledge of the particular facts of the crime[s]." *Id.* at 16, P.2d at 412. Similarly, in *State v. Turkal*, the veracity of a "'concerned juvenile citizen,'" who told police a suspect was furnishing illegal drugs to juveniles and taking nude photographs of young girls and had asked the informant herself to pose, was confirmed because police corroborated her story through another informant whose information to police had proven reliable on at least ten separate occasions. 93 N.M. 248, 250, 599 P.2d 1045, 1047 (1979).

**{26}** By contrast, where an informant's details were limited and provided only innocent facts unrelated to the alleged illegal activity, we found there was insufficient corroboration to rely on the hearsay. In *Cordova*, after an informant told police that a man was selling heroin from a particular residence, the police corroborated his descriptions of the suspect's house and car. 109 N.M. at 212, 784 P.2d at 31. We held that this limited corroboration was insufficient. *Id.* at 219; 784 P.2d at 38 ("[T]he affidavit in essence asked the magistrate to believe that the informant was reliable merely because the house and car existed, and further asked the magistrate to believe that because the house and car existed, the man and the heroin probably did as well.").

**{27}** In this case, the three levels of sources provide only one detail that was independently corroborated: the fact that Victim stole from Defendant. This lone corroborated fact does not provide any "unique knowledge of the particular facts of the crime" like the detailed description of the burglaries in *Jones*. The affidavit itself suggests that, far from being unique knowledge, this fact was probably well known. The State argues that while Victim's reputation for stealing may have been known, there is no evidence that people knew Victim stole from Defendant specifically. But neither does the affidavit provide for a reasoned inference that this fact was not public knowledge. Similar to the affidavit in *Cordova*, the affidavit in this case asks the issuing magistrate to accept the informants' statements as true merely because several sources provided a fact that was likely well known or at least the subject of inference or gossip in the community. Nothing in New Mexico law would make the independent corroboration of this lone fact a sufficient basis for establishing either the truthfulness of unidentified hearsay sources or for determining their reports reliable. The same rationale applies to the State's argument that, because the information comes from three unknown sources, it therefore must be reliable. Unlike the concerned juvenile in *Turkal* whose information was corroborated by a credible source, this affidavit provides the statements of several sources without establishing the veracity of any single one of them. And we have found no precedent holding that having more than one

unidentified known source passing along the same information, perhaps originating from the same rumor, makes the hearsay report any more reliable.

**{28}**    Because the affidavit failed to establish either the truthfulness of its sources or the factual bases of their allegations, the conclusory hearsay accounts of Defendant's alleged admission to some unidentified person or persons did not furnish probable cause for issuance of a search warrant.

**C.    The Nonhearsay Allegations in the Affidavit**

**{29}**    In a change of position on appeal, the State now argues in the alternative that the nonhearsay portions of the affidavit established probable cause.  *See Snedeker*, 99 N.M. at 292, 657 P.2d at 619 ("The warrant is not rendered invalid by the inclusion in the affidavit of some information that is not supported by probable cause.  The warrant may nevertheless stand if the remaining allegations demonstrate probable cause.").

**{30}**    In support of its current position, the State points to several statements the affidavit alleges Defendant made to police, that Victim's blood could be in his bathroom, that Victim stole from him, that he had sex with Victim, and that he owned a baseball bat that was his weapon of choice; and the State also relies on the representation by the affiant that Defendant's home was near the place where Victim's body was discovered.  But  these five matters support only a suspicion that Defendant possibly had a role in Victim's death or that evidence could be in his home.  "Mere suspicion about ordinary, non-criminal activities, regardless of an officer's qualifications and experience, does not satisfy probable cause." *Nyce*, 2006-NMSC-026, ¶¶ 2, 13-14 (holding that the defendant's hurriedly purchasing iodine at one store and then hydrogen peroxide at another may have raised police suspicions about possible methamphetamine production but did not amount to probable cause).

**{31}**    Defendant's admission that Victim's blood may have been in his bathroom fails to illustrate how her blood was evidence of a homicide instead of evidence of drug use. Lacking this context, we are left only with Defendant's acknowledgment that Victim may have left blood in his bathroom at some time in their relationship.  Such an "admission" applies to any home that Victim ever visited where she used heroin or even a shaving razor.

**{32}**    Second, the inference that Defendant had a reason to be angry at Victim for stealing from him does not provide significant support for probable cause to believe that Defendant murdered Victim.  As the affidavit states, Victim had an "extensive history" of stealing from others, including some of Defendant's neighbors, any of whom presumably would have had a reason to be upset with her.

**{33}**    Third, that Defendant paid Victim for sex adds little or nothing to the substantial evidence required to support probable cause.  The State argues that the encounters provided Defendant with "multiple opportunities to kill the victim while she was alone with him in his home."  Yet the same could be said of anyone Victim ever visited, regardless of whether

9

those encounters were sexual in nature.

**{34}** Fourth, Defendant's possession of a baseball bat, even for personal protection, establishes nothing more than a speculative possibility that Defendant's bat could have been the weapon that inflicted the blunt force trauma on Victim. Any number of common objects are capable of producing such a fatal head wound, but the affidvait contained no information that Victim's injury was caused by any bat, much less Defendant's own bat, which was in police possession by the time the warrant was procured. There is nothing unusual about having an ordinary baseball bat in one's home and nothing unlawful about having it available for personal protection. "Our inquiry should be particularly exacting when . . . [an activity is] equally consistent with legal activity." *Nyce*, 2006-NMSC-026, ¶ 14. Simply because the Defendant identified the bat as a protective weapon is not evidence that it was used as the murder weapon.

**{35}** The statement that Defendant lived in "close proximity" to where Victim's body was found is also of minimal help in establishing probable cause. The generalized nature of the statement applies equally to any of Defendant's neighbors.

**{36}** We conclude that the totality of the bits and pieces of circumstantial nonhearsay content of the affidavit fails to provide the substantial evidence required for the magistrate to find probable cause that evidence of a murder was located in Defendant's home. Because the affidavit failed to establish constitutionally adequate probable cause, the police search of Defendant's home was unreasonable under Article II, Section 10 of the New Mexico Constitution, and the resulting evidence must be suppressed.

## III. THE DISTRICT COURT ERRED IN APPLYING THE INEVITABLE DISCOVERY DOCTRINE

**{37}** In the district court, the State conceded "that the search warrant as written is faulty" but argued that if the magistrate "had rejected the affidavit the information could have been provided and the warrant could have been fixed." In its briefing to this Court, the State now concedes that the inevitable discovery doctrine does not support the district court's refusal to suppress the carpet pieces seized as evidence under this warrant. Because we are "not . . . bound by the State's concession," we nevertheless address the issue. *See State v. Muniz*, 2003-NMSC-021, ¶ 5, 134 N.M. 152, 74 P.3d 86 (rejecting that this Court was bound by the state's earlier concession), *superseded by statute on other grounds as recognized by State v. Jones*, 2010-NMSC-012, ¶ 19, 148 N.M. 1, 229 P.3d.474.

**{38}** The district court accepted the State's inevitable discovery argument below, noting that because the carpet was fixed to Defendant's floor, "it wasn't going anywhere," that "there was sufficient evidence, or at least some probable cause, it's just that the deputies just didn't put it in the warrant," and that therefore "these officers could have secured a warrant later on down the road if they had done it properly."

10

**{39}** Two major flaws prohibit such a sweeping we-could-have-done-it-lawfully-so-it-doesn't-matter-that-we-didn't view of the limited inevitable discovery exception to the exclusionary rule. First, the inevitable discovery doctrine applies where evidence that was obtained through unlawful police conduct inevitably would have been otherwise discovered through a different and independent lawful means. *See State v. Saiz*, 2008-NMSC-048, ¶ 20, 144 N.M. 663, 191 P.3d 521 (recognizing the inevitable discovery rule in *State v. Johnson*, 1996-NMCA-117, ¶ 19, 122 N.M. 713, 930 P.2d 1165 ("[E]vidence that was seized unlawfully but would have been seized independently and lawfully in due course is admissible under [the] inevitable discovery rule.") and holding that inevitable discovery applied where a police search of the defendant's wallet after an arrest uncovered evidence that inevitably would have been found during a mandatory and imminent inventory search), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 & n.1, 146 N.M. 357, 210 P.3d 783. Nothing in the record in this case suggests that the bloody carpet would inevitably have been discovered and seized by any method other than a search warrant. Nor does New Mexico recognize a good-faith exception to the warrant requirement that would allow the State to justify not setting forth probable cause in the warrant. *See Gutierrez*, 116 N.M. at 432, 863 P.2d at 1053 (rejecting a good-faith exception to the exclusionary rule as incompatible with New Mexico's constitutional protections). Lacking a valid warrant, the record does not indicate the police inevitably would have made a lawful entry into Defendant's home to examine and seize the carpet.

**{40}** More fundamentally, the reasoning of the district attorney and the district court would make utterly meaningless and unenforceable both the constitutional requirement of a written showing of probable cause and the requirement that probable cause be available to a reviewing court within the four corners of the affidavit. Probable cause must be found within the affidavit submitted in support of a search warrant, not in what the affidavit could have contained.

**{41}** The argument made by the State and accepted by the district court would reduce every challenge to the constitutional adequacy of the probable cause showing in an affidavit to a dispute over whether the police could have prepared a constitutionally sufficient affidavit if they had gone back to do it over correctly. In fact, the same argument could be used to try to admit evidence obtained from an unlawful warrantless search as well, where the State could argue that police could have obtained the same evidence if they had used available but undisclosed information to procure a lawful warrant. This Court cannot excuse an unlawful search in violation of the constitutional rights of any citizen when police could have performed a lawful search but failed to do so. Where "the state has transgressed the constitutional rights of a person accused of a crime, we will not sanction that conduct by turning the other cheek." *Gutierrez*, 116 N.M. at 446, 863 P.2d at 1067.

**{42}** We therefore conclude from our own review that the State is correct in its appellate concession that the inevitable discovery doctrine does not justify evidentiary use of the seized carpet pieces.

11

## IV.    CONCLUSION

**{43}**    It is regrettable that the police, for whatever reason, did not comply with established constitutional requirements necessary to obtain judicial permission for entry into a home. And it is regrettable that because they failed to do so, relevant evidence must be excluded from evidence in a serious criminal case.  But over a half-century of settled law has recognized that exclusion is necessary in order to make meaningful the constitutional command that no government official may enter a person's home without a lawful search warrant or other constitutional justification.  As the United States Supreme Court emphasized in its landmark ruling that state courts could not admit evidence obtained in violation of the constitutional protection against unreasonable searches and seizures, "[n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." *Mapp v. Ohio*, 367 U.S. 643, 659 (1961).

**{44}**    Without a lawful warrant or a valid exception to the exclusionary rule, the seizure of the carpet from Defendant's home was unlawful, and the law requires that it be suppressed as evidence.  Accordingly, we affirm the district court's finding that the warrant lacked probable cause, reverse the district court's partial denial of Defendant's suppression motion, and remand to the district court for further proceedings consistent with this Opinion.

**{45}    IT IS SO ORDERED.**

 

_____
                **CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Haidle*, No. 32,828**

**APPEAL AND ERROR**
Interlocutory Appeal

12

Right for Any Reason Doctrine

**CONSTITUTIONAL LAW**
Fourth Amendment
New Mexico Constitution, General
Suppression of Evidence

**CRIMINAL PROCEDURE**
Probable Cause
Warrant

**EVIDENCE**

Hearsay Evidence