The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 13, 2023

**No. A-1-CA-40005**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**VICTOR M. CASTILLO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred Van Soelen, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellee

Attorney and Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant

**OPINION**

**DUFFY, Judge.**

{1}     Defendant Victor Castillo pleaded guilty to multiple counts of sexual exploitation of a child (both possession and manufacturing) in 2013.[1] Nearly seven years later, Defendant was permitted to withdraw his plea. In the two months before the case was set for trial on the remaining charges, Defendant filed three motions, seeking to (1) dismiss on speedy trial grounds, (2) suppress evidence obtained pursuant to a search warrant, and (3) dismiss for violation of his right to effective assistance of counsel. The district court denied all three motions. Shortly thereafter, Defendant entered into a conditional plea agreement that reserved his right to appeal the district court's denial of his "motion to dismiss and motion to suppress." Detecting no error in the district court's rulings, we affirm.

**BACKGROUND**

{2}     In July 2012, Officer Matthew Broom obtained a search warrant and seized Defendant's cell phone. In his affidavit supporting the search warrant, Officer Broom noted that he had interviewed a sixteen-year-old (identified in the affidavit as Female 1) about an incident that occurred on July 9, 2012, when she, her boyfriend, and another sixteen-year-old (identified in the affidavit as Female 2) went

---

[1]Defendant also pleaded guilty to one count of criminal sexual contact of a minor and one count of criminal sexual penetration of a minor, but those charges are not at issue in this appeal.

to a party at Defendant's house. According to Female 1, Defendant, who was a former law enforcement officer, had provided alcohol to the minors. During the party, Female 2 and Defendant went into his bedroom. Female 1 and her boyfriend went into a guest bedroom and were having sex when Female 2 entered the room and recorded them using Defendant's cell phone. Female 1 and her boyfriend yelled at Female 2 to leave. On the drive home, Female 2 told Female 1 that Defendant had also used his cell phone to record Female 2 and Defendant having sex. Female 1 told Officer Broom that she believed Female 2 and Defendant had been involved in some kind of relationship for approximately two months before July 9, 2012, but they had not had sex until that evening. Female 1 additionally reported that she had received inappropriate sexual text messages from Defendant later that night. Based on this information, Officer Broom prepared an affidavit for a search warrant for Defendant's home and cell phone.

{3} Upon preliminary inspection of Defendant's cell phone, it appeared pertinent data had been erased. Officer Broom took the phone to the Regional Computer Forensic Laboratory, which located thousands of deleted images, including illicit photographs of both Female 2 and Defendant. Defendant was indicted in September 2012, and in March 2013 he pleaded guilty to ten counts of sexual exploitation of a minor (possession), two counts of sexual exploitation of a child (manufacturing),

2

one count each of criminal sexual contact and criminal sexual penetration of a minor. The district court sentenced Defendant to twenty-five years in prison.

{4}    Five years later, in July 2018, Defendant filed a petition for writ of habeas corpus, arguing that his convictions on ten counts of sexual exploitation of a child (possession) and two counts of sexual exploitation of a child (manufacturing) violated double jeopardy. Defendant relied primarily on a case decided the year after he entered his plea, *State v. Olsson*, 2014-NMSC-012, 324 P.3d 1230. The district court granted Defendant's petition in part and vacated nine of the possession counts. As a remedy, Defendant was allowed to withdraw his plea agreement in August 2020.

{5}    The district court set the case for trial in April 2021. Two months before trial, Defendant filed a motion to dismiss on speedy trial grounds, claiming that he had experienced an excessive eight-year delay between September 2012, when he was indicted, and August 2020, when he was permitted to withdraw his plea. Two weeks later, Defendant filed a motion to suppress evidence obtained pursuant to the search warrant, arguing that the warrant was overbroad, the search exceeded the scope of the warrant, and the warrant affidavit did not establish that Female 1 and Female 2 were reliable informants. Finally, one month before trial, Defendant filed a motion to dismiss for ineffective assistance of counsel, arguing that his previous attorney had allowed him to enter into a plea agreement as to multiple counts of sexual

exploitation of a child when the rule of lenity allowed for only one charge. Defendant also argued that his counsel failed to file a motion to suppress, did not seek exculpatory evidence, failed to interview witnesses, and did not bring his case to trial in a timely manner.

{6} The district court denied all three motions in separate letter decisions. On Defendant's speedy trial motion, the court concluded that "the time period for analysis of speedy trial rights only applies to that time when a person is 'accused' of a crime." The court declined to count the time elapsing from the original plea agreement until Defendant was permitted to withdraw his plea because Defendant "was not accused of a crime [during that period], he was convicted of a crime and serving a sentence." The district court went on to balance the other speedy trial factors and found that Defendant's right had not been violated.

{7} As for the motion to suppress, the district court found that the search warrant was not overly broad because the warrant affidavit contained specific information that provided the "basis and parameter of the search of the phone for the photographs, videos, text messages, etc. that are related to the alleged criminal activity described by the witnesses/alleged victim." The district court further found that the search of the phone had not exceeded the scope of the warrant, noting that "no specific items were identified as being outside the scope of the warrant." The

4

district court also stated that the informants "were sufficiently reliable such that a judge could find probable cause contained in the affidavit."

{8}     Finally, the district court concluded that defense counsel's representation of Defendant did not rise to the level of ineffective assistance of counsel and denied Defendant's motion to dismiss on that basis. The court further observed that even if Defendant were successful on his ineffective assistance claim, the remedy would be to allow Defendant to withdraw his guilty plea—the same relief Defendant had already received via his successful habeas corpus petition.

{9}     Three weeks after the district court entered its decisions on Defendant's motions, Defendant entered a conditional plea agreement whereby he pleaded guilty to one count of contributing to the delinquency of a minor, one count of sexual exploitation of children (manufacturing), and one count of tampering with evidence. The plea agreement specifically reserved Defendant's right to appeal the district court's denial of his motions. Thereafter, the district court sentenced Defendant to a total of seven-and-one-half years' imprisonment. Defendant received over nine years' credit for time he had already served, resulting in his immediate release from custody.

**DISCUSSION**

**I.    Speedy Trial**

{10}    Defendant claims the district court erred in denying his motion to dismiss for violation of his right to a speedy trial. We review this issue in light of the four-factor balancing test articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), under which courts consider: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. When reviewing a district court's ruling on a motion to dismiss due to a speedy trial violation, we defer to the district court's factual findings but review the court's application of the *Barker* factors de novo. *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272.

**A.    The Length of the Delay**

{11}    We first assess the length of the delay to determine whether the delay is presumptively prejudicial. *See id.* ¶ 20 (noting that "the length of delay acts as a triggering mechanism requiring further inquiry into the *Barker* factors once the delay has reached a specified amount of time, depending on the difficulty of the case" (internal quotation marks and citation omitted)). The district court determined that this was a complex case, and therefore, a delay of eighteen months is presumptively prejudicial. *See State v. Garza*, 2009-NMSC-038, ¶¶ 2, 49, 146 N.M. 499, 212 P.3d 387. While Defendant asserts that we should treat this as a case of intermediate

complexity with a threshold length of delay of fifteen months, we are deferential to the district court's finding of complexity, which was supported by the nature of the issues, the ages of the witnesses, and the passage of the time. *See State v. Ochoa*, 2017-NMSC-031, ¶ 15, 406 P.3d 505.

{12}     Turning to the length of the delay, the district court concluded the delay exceeded the eighteen-month threshold based on (1) the seven-and-a-half-month period from September 5, 2012, the date Defendant was charged, through April 22, 2013, the date of his initial guilty plea, and (2) the thirteen-month period in which the case was pending after Defendant was permitted to withdraw his plea on August 24, 2020. Defendant argues that the length of the delay should include the seven-plus years he spent incarcerated after he pleaded guilty in 2013. The district court rejected this argument, concluding that the Sixth Amendment speedy trial guarantee "protects the accused from the arrest or indictment through trial but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges." *Betterman v. Montana*, 578 U.S. 437, 439, 441 (2016) (holding that "the right detaches upon conviction"). *Betterman* is controlling and dictates that our speedy trial analysis does not include the period after Defendant pleaded guilty. As such, we agree with the district court's assessment that the period of delay in this case amounts to just over twenty months.

{13} While this is sufficient to trigger further inquiry into the other *Barker* factors, the twenty-month delay is not extraordinary and "scarcely crosses the bare minimum needed to trigger judicial examination of the claim." *Garza*, 2009-NMSC-038, ¶ 24 (internal quotation marks and citation omitted). We accordingly weigh this factor only slightly against the State.

**B.     Reasons for the Delay**

{14} Under the second *Barker* factor we consider the reason for the delay. The district court determined that all of the delay in this case weighed neutrally, noting that "[t]he initial trial settings were vacated after the parties entered into a plea agreement in a relatively short amount of time: seven (7) months and seventeen (17) days." Likewise, the district court determined that after Defendant withdrew his plea in August 2020,

> the initial trial setting in April, 202[1] was vacated so that the [c]ourt could hear [Defendant]'s motions. This was to his benefit and at his request. This time period does not count against the State. After the hearing, the [c]ourt took the matters under advisement. The delay this caused does not count against the State . . . [and] was not caused by [Defendant].

Defendant does not address this analysis on appeal, largely focusing instead on the period after his initial guilty plea through his withdrawal of that plea. In light of *Betterman*, this period is not relevant to our speedy trial analysis. Defendant's remaining factual assertions about the reasons for the delay were first raised in the reply brief and no ruling on these assertions was invoked in the district court. *See*

8

*State v. Lopez*, 2008-NMCA-002, ¶ 25, 143 N.M. 274, 175 P.3d 942; *see also State v. Hosteen*, 1996-NMCA-084, ¶ 20, 122 N.M. 228, 923 P.2d 595 (declining to address issues not "adequately argued and supported by authority in the brief-in-chief"). As for the relevant period, we perceive no error in the district court's assessment that all of the delay was neutral. *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 (describing neutral delay as "periods of time considered inevitable and periods during which the case is moved toward trial with customary promptness" (internal quotation marks and citation omitted)). Accordingly, these periods do not weigh against the State or Defendant. *See id.*

## C.    Assertion of the Right

{15}    "The third *Barker* factor asks us to consider whether [the d]efendant asserted the right to a speedy trial." *Ochoa*, 2017-NMSC-031, ¶ 41. The Court weighs "the 'frequency and force' of the defendant's objection to the delay." *Garza*, 2009-NMSC-038, ¶ 32. The district court noted that Defendant filed several assertions over the years. These included an initial pro forma demand shortly after Defendant was charged, and another pro forma demand on the same day he withdrew his plea in August 2020. *See Valencia*, 2010-NMCA-005, ¶ 27 ("Early pro forma assertions are generally afforded relatively little weight."). Defendant demanded a speedy trial again in February 2021 and submitted his motion to dismiss for a speedy trial violation the following day.

9

{16} The district court credited these assertions but ultimately concluded that even though Defendant had asserted the right, he had not done so vigorously. In support of that conclusion, the court noted that Defendant had caused some delay by filing several motions shortly before trial and acquiesced to the ensuing delay so that the motions could be heard. We disagree with the district court on this point; the brief delay occasioned by Defendant's motions does not amount to the sort of maneuvering that would harm Defendant's assertion of the right, particularly in light of the fact that all of the delay in this case weighed neutrally. *See Garza*, 2009-NMSC-038, ¶ 32. We otherwise agree with the district court's determination that Defendant's assertion was not especially vigorous, and accordingly weigh this factor slightly in Defendant's favor. *See id.* ¶ 34.

**D.      Prejudice to the Accused**

{17} The final *Barker* factor examines whether Defendant suffered prejudice from the delay. Three sources of prejudice might arise: "(1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and . . . (3) impairment of the defense." *State v. Urban*, 2004-NMSC-007, ¶ 17, 135 N.M. 279, 87 P.3d 1061. On appeal, Defendant focuses on the second and third types of prejudice.

{18} Defendant testified regarding the anxiety and concern he had experienced throughout the duration of this case. He stated that he had contracted two severe cases of COVID-19, once in 2019 at the start of the pandemic (a point that falls

outside the period we consider for purposes of our analysis) and a second case at some unspecified time in 2020. He also stated that he had post-traumatic stress disorder due to time served in the military, though he did not elaborate on how that had affected him during the time this case was awaiting trial. Defendant affirmed that he had been locked down for extended periods of time and had been a target for violence because of his status as a former police officer. Based on this testimony, and in view of the relevant period we may consider, we see no error in the district court's conclusion that Defendant suffered some prejudice "because of his PTSD and ex-officer status." *See State v. Serros*, 2016-NMSC-008, ¶ 91, 366 P.3d 1121.

{19}    As to impairment of the defense, Defendant argues that "witness memories have faded, . . . [he] has not been provided with any current addresses for any witnesses, . . . [and] Defendant believes there is still documentary evidence that has not been disclosed." The district court did not make any specific findings on this point. Our analysis is complicated by the fact that although more than eight years elapsed between the two trial settings, only twenty months of this entire period is considered for purposes of the speedy trial analysis. Regardless, even if we were to presume there was some impairment of the defense due to the passage of time, Defendant was still "obligated to state with particularity what exculpatory evidence would have been offered." *See Ochoa*, 2017-NMSC-031, ¶ 62 (alterations, internal quotation marks, and citation omitted). Here, Defendant made no showing as to what

exculpatory evidence would have been offered and his claims are, at best, speculative. *See id.*; *see also Urban*, 2004-NMSC-007, ¶ 18.

{20} Overall, Defendant has not persuaded us of error in the district court's assessment. While Defendant suffered some prejudice due to anxiety and concern, and we presume some impairment to the defense because of the passage of time, we conclude that this factor weighs only slightly in his favor. *See Ochoa*, 2017-NMSC-031, ¶ 62.

## E.     Balancing the Factors

{21} Although Defendant suffered some prejudice during the twenty-month period he stood accused, this fact "is simply not enough to tip the scale in favor of [his] speedy trial claim" because none of the factors weigh strongly in his favor. *Id.* ¶ 66; *Garza*, 2009-NMSC-038, ¶ 39 (acknowledging that "in some circumstances, prejudice may be presumed" but that presumed prejudice is "insufficient to carry a speedy trial claim absent a strong showing on the other *Barker* factors"). The length of the delay barely crossed the threshold of presumptive prejudice, the reasons for the delay are not attributable to either party and weigh neutrally, and the assertion of the right weighs only slightly in Defendant's favor. *Cf. State v. Coffin*, 1999-NMSC-038, ¶ 72, 128 N.M. 192, 991 P.2d 477 (finding no speedy trial violation where the delay in the case was nominal, the defendant was partly responsible for the delay, the defendant did not meaningfully assert his right, and he only suffered "minor

undue prejudice"). Under the circumstances presented, Defendant's right to a speedy trial was not violated.

## II.      Motion to Suppress the Search Warrant

**{22}** Defendant argues that the district court improperly denied his motion to suppress evidence obtained pursuant to the search warrant because (1) the warrant affidavit contained unreliable hearsay, (2) the warrant itself was an over-broad, non-particularized general warrant, and (3) the search at the forensic laboratory exceeded the scope of the warrant. We address each argument in turn.

## A.      Hearsay in the Warrant Affidavit

**{23}** Defendant claims the investigating officer's affidavit failed to establish probable cause because the affidavit was based entirely on hearsay information that failed to satisfy the requirements of Rule 5-211(E) NMRA. "Rule 5-211(E) . . . provides that when a showing of probable cause depends in whole or in part on hearsay information, the affidavit must show 'a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished.'" *State v. Haidle*, 2012-NMSC-033, ¶ 17, 285 P.3d 668 (quoting Rule 5-211(E)); *id.* (recognizing that this two-pronged test contemplates "the 'veracity' (or 'credibility') and 'basis of knowledge' (or 'factual basis') requirements for evaluating information from hearsay sources" (internal quotation marks and citation omitted)).

13

**{24}** In his brief in chief, Defendant makes no argument as to the veracity prong and focuses, instead, on the informant's basis of knowledge. "Under the 'basis of knowledge' prong of the test, we ask whether the affidavit provides a substantial basis for concluding the informants gathered the information of illegal activity in a reliable fashion." *Haidle*, 2012-NMSC-033, ¶ 23 (alteration, internal quotation marks, and citation omitted). It is well settled that first-hand observations satisfy the "basis of knowledge" prong. *See State v. Barker*, 1992-NMCA-117, ¶ 5, 114 N.M. 589, 844 P.2d 839.

**{25}** Defendant asserts that the affidavit lacked a factual basis because "[m]uch of the affidavit is devoted to what Female [2] told Female [1] on the trip back to her residence. The only first-hand observation of criminal activity by Female [1] consisted of Female [2] video recording Female [1] and her boy-friend." This is not the case. The vast majority of the hearsay in the warrant affidavit consisted of Female 1's firsthand observations. For example, Female 1 stated she and another minor had consumed alcohol provided by Defendant at Defendant's house on July 9, 2012. She also observed Female 2 go into a bedroom with Defendant. At some point that evening, Female 1 saw Female 2 using Defendant's cell phone to record Female 1 and her boyfriend having sex. Finally, Female 1 stated that she had personally received "inappropriate sexual text messages" from Defendant that evening.

14

{26} Defendant argues that the affidavit did not sufficiently state how Female 1 could identify Defendant's phone, how she knew that Female 2 was recording anything, or that Defendant knew his phone was being used for this purpose. Likewise, Defendant argues that the affidavit did not define what "inappropriate sexual text messages" meant, nor did the affidavit explain how Female 1 knew the messages were from Defendant. We decline to interpret the affidavit in the hyper-technical manner Defendant proposes. *See State v. Williamson*, 2009-NMSC-039, ¶ 30, 146 N.M. 488, 212 P.2d 376 (warning against invalidating "a search warrant on the basis of any small item that appears to be wrong in the affidavit" (alteration, internal quotation marks, and citation omitted)). Based on a commonsense reading of the affidavit as a whole, the affidavit contains an adequate basis for Female 1's knowledge based on her first-hand observations. *See Barker*, 1992-NMCA-117, ¶ 5.

{27} The only information that Female 1 reported hearing from Female 2 was that Defendant had recorded Female 2 and himself having sexual intercourse twice using his cell phone. This Court has previously said that "the presence of 'double hearsay', in itself, does not render the affidavit legally insufficient." *State v. Perea*, 1973-NMCA-123, ¶ 15, 85 N.M. 505, 513 P.2d 1287 (citing *United States v. Smith*, 462 F.2d 456, 459 (8th Cir. 1972). "[M]ore than one level of hearsay can support a search warrant affidavit provided each source meets both the veracity and basis of knowledge tests." *Haidle*, 2012-NMSC-033, ¶ 18. However, Defendant has not used

15

this framework to analyze the statements attributed to Female 2, and Defendant has otherwise failed to develop an argument on this point. For these reasons, we conclude Defendant has not met his burden of demonstrating error in the issuing court's probable cause determination. *See Lukens v. Franco*, 2019-NMSC-002, ¶ 5, 433 P.3d 288 ("When a criminal conviction is being challenged, counsel should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure." (internal quotation marks and citation omitted)); *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that this Court does not review unclear or undeveloped arguments on appeal that would require this Court to guess at what a party's arguments might be).

**B.      The Warrant Was Not Overbroad**

{28}      Defendant argues that the search warrant was overbroad and non-particularized because it did not list what content law enforcement was to search for, nor did it contain a date restriction for the search of the cell phone's contents. The warrant specifically authorized a search of Defendant's home and seizure of "[a]ny and all recording devices to include cellular phones, computers, video cameras, digital cameras, mass storage devices, external/internal hard drives," as well as "[t]he personal cellular phone belonging to [Defendant]." As the State notes, the only item seized was Defendant's cell phone.

16

**{29}** The Fourth Amendment to the United States Constitution demands "that warrants shall particularly describe the things to be seized." *State v. Hinahara*, 2007-NMCA-116, ¶ 8, 142 N.M. 475, 166 P.3d 1129 (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). "The test for particularity is whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *State v. Patscheck*, 2000-NMCA-062, ¶ 8, 129 N.M. 296, 6 P.3d 498 (internal quotation marks and citation omitted). "It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *State v. Jones*, 1988-NMCA-058, ¶ 8, 107 N.M. 503, 760 P.2d 796 (internal quotation marks and citation omitted). We review the warrant and the accompanying affidavit together under these standards. *See Hinahara*, 2007-NMCA-116, ¶ 10.

**{30}** Here, the warrant and Officer Broom's affidavit were sufficiently particular to focus the search and to instruct officers regarding the items to be seized. *See id.* ¶¶ 10-11. The affidavit contained facts establishing probable cause to believe Defendant had committed several sex crimes at his home, including using his cell phone to manufacture child pornography. The warrant explicitly sought Defendant's cell phone and the data stored on the cell phone—items specifically connected with

17

the crimes described in the affidavit. *See State v. Gonzales*, 2003-NMCA-008, ¶ 34, 133 N.M. 158, 61 P.3d 867 (holding that the description in the search warrant was sufficiently particular when the items sought "were potentially connected to the instrumentality of the assault described in the affidavit"), *abrogated on other grounds by Williamson*, 2009-NMSC-039, ¶ 29. A commonsense reading of the warrant and the accompanying affidavit would lead executing officers to search for Defendant's phone as well as images of the sexual encounters described in the affidavit and text messages Defendant sent to Female 1. *See id.* Based on the offenses described and the information set forth in the affidavit, we conclude the description in the search warrant was not overly broad.

{31}     Defendant also challenges the lack of a date restriction for the search of his phone's contents. Defendant cites federal cases suggesting that time limitations prevent overbreadth in some circumstances. In these cases, courts have determined that a temporal limitation is not strictly required, and have evaluated the warrant based on the circumstances presented in the case. *See, e.g.*, *United States v. Jacobson*, 4 F. Supp. 3d 515, 524-26 (E.D.N.Y. 2014) (upholding a warrant that lacked a temporal limitation as sufficiently particular based on the complexity and duration of the alleged criminal activities, where the warrant otherwise referenced particular crimes and used illustrative lists limiting the items to be seized); *United States v. Zemkyansky*, 945 F. Supp. 2d 438, 454 (S.D.N.Y. 2013) ("While the Second

Circuit has not yet definitively addressed the necessity of temporal limitations, amongst the district courts in this circuit there is general agreement that a time frame is relevant, though there is no apparent consensus as to when one is required." (alterations, emphasis, internal quotation marks, and citation omitted)). This Court has held similarly and indicated that date limits are not strictly required. *See Jones*, 1988-NMCA-058, ¶ 11 (noting that in certain circumstances, it would not be reasonable "to limit the search warrant only to documents from specific dates and periods of time"). In this case, the lack of an express date range is not fatal given that the affidavit reported Defendant had been involved in a romantic relationship with Female 2 for two months and was otherwise particular about the nature of the crimes for which the search was undertaken. *Cf. United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) (holding that the warrant was overbroad where it expressly authorized search for records from January 1996 through May 2002 when "the warrant was valid only with respect to bank fraud for a three-month period in 1999"). Because the warrant affidavit provided guidance on the scope of the search, *see Hinahara*, 2007-NMCA-116, ¶¶ 10-11, and Defendant has not directed us to any information in the record indicating that the evidence produced from the search of his phone was unrelated to the events described in the warrant affidavit, we perceive no basis to suppress any of the items seized pursuant to the warrant. *See Abboud*, 438 F.3d at 576 (holding that a finding of overbreadth does not require suppression

19

of all items seized pursuant to a warrant, but only those items obtained that exceeded the proper scope of the search); *State v. Dyke*, 2020-NMCA-013, ¶ 16, 456 P.3d 1125 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings" (internal quotation marks and citation omitted)).

{32} We conclude the search warrant described the scope of the search and the items to be seized with sufficient particularity, given the circumstances and nature of the criminal activity being investigated, and Defendant has not established that the search exceeded the scope authorized by the warrant.

**C.     The Warrant Authorized the Search by the Forensic Laboratory**

{33} Defendant argues that the search of his cell phone at the forensic laboratory exceeded the scope of the warrant and amounted to an illegal warrantless search. He argues that Officer Broom should have acquired a second search warrant in order to obtain the forensic analysis.

{34} In this case, the affidavit specifically authorized "the complete search of" Defendant's cell phone. The affidavit also stated that it "may be necessary to view, listen to, and/or manipulate the herein-described items, to be searched in order to copy, transcribe, transfer and/or otherwise document the data," in part because "people involved in the commission of crime(s) often attempt to conceal, tamper with and or dispose of evidence." *Cf. Patscheck*, 2000-NMCA-062, ¶¶ 17-18

20

(holding that an expansive search for child pornography on a computer did not exceed the scope of a search warrant that authorized the seizure of the computer); *Hinahara*, 2007-NMCA-116, ¶ 21 ("[T]he seizure of unlawful images from within [the d]efendant's computer was within the scope of the warrant because the warrant authorized the search of the computer for the illegal images."). Defendant has not offered any authority to indicate how or why the forensic search exceeded the scope of the warrant, particularly in light of the specific authorizations set out above. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (stating absent cited authority, "[w]e assume no such authority exists").

{35} All told, Defendant has not demonstrated any error in the district court's analysis, and we affirm the district court's denial of Defendant's motion to suppress.

## III. Ineffective Assistance of Counsel

{36} Finally, Defendant argues that the district court erroneously denied his motion to dismiss for ineffective assistance of counsel. Defendant's motion claimed that he received ineffective assistance of counsel because his attorney allowed him to enter into the original plea agreement, failed to file a motion to suppress the search warrant, did not seek exculpatory evidence, and otherwise failed to provide an adequate defense. Citing an unreported out of state authority, Defendant maintains that the remedy should be dismissal because the ineffective assistance led to a violation of his speedy trial right. *See State v. Velez*, 2014-Ohio-4328, ¶ 17 (Ohio

21

Ct. App.) (unreported) (holding that dismissal of the indictment was an appropriate remedy where ineffective assistance of counsel was based on the attorney's failure to file an objection to a form waiver of the defendant's speedy trial rights).

{37}  Defendant's arguments, both in the district court and on appeal, appear only to address counsel's conduct before Defendant entered into first plea agreement. Defendant has not indicated that he received ineffective assistance after he was allowed to withdraw his plea, and we limit our analysis accordingly. Putting aside the merit of Defendant's claims, we share the district court's observation that if Defendant were successful in his claim, the remedy would be to allow him to withdraw his original plea agreement. *See, e.g.*, *State v. Paradez*, 2004-NMSC-036, ¶ 24, 136 N.M. 533, 101 P.3d 799 (remanding with instructions to allow the defendant to withdraw his guilty plea if the district court finds ineffective assistance). Defendant has already received this very relief. As such, we detect no error in the district court's denial of Defendant's motion to dismiss for ineffective assistance of counsel.

**CONCLUSION**

{38}  For the foregoing reasons, we affirm.

{39}    **IT IS SO ORDERED.**

_____

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

_____

**JANE B. YOHALEM, Judge**

_____

**KATHERINE A. WRAY, Judge**