The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: June 5, 2025

**NO. S-1-SC-39309**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**MICHELLE L. PEREA,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Angie K. Schneider, District Judge**

Law Offices of the Public Defender
Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Carrie Cochran, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Office of the Attorney General
Hector H. Balderas, Attorney General
Meryl E. Francolini, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**BACON, Justice.**

{1}      This case requires us to determine whether information provided by a confidential informant (CI) in an application for a search warrant satisfies the requirement of probable cause for a search warrant under Article II, Section 10 of the New Mexico Constitution. Rule 5-211(E) NMRA requires probable cause to be "based on substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Our rule codifies the requirements of *Aguilar v. Texas*, 378 U.S. 108 (1964) (*abrogated by Illinois v. Gates*, 462 U.S. 213 (1983)), and *Spinelli v. United States*, 393 U.S. 410 (1969) (same abrogation). The United States Supreme Court subsequently "abandon[ed]" the *Aguilar-Spinelli* test in favor of a "totality of the circumstances analysis" in *Gates*, 462 U.S. at 238, but we continue to follow the two-prong test set forth in *Aguilar-Spinelli* because it more closely "effectuates the principles behind Article II, Section 10" of the New Mexico Constitution. *State v. Cordova*, 1989-NMSC-083, ¶ 17, 109 N.M. 211, 784 P.2d 30.

{2}      Under Rule 5-211(E), when an affidavit for a search warrant relies on a CI's hearsay in whole or in part, the affidavit must set forth both (1) a substantial basis

for believing the informant to be credible and (2) a substantial basis for the reliability of the information provided by the informant. *Id.* ¶ 11. This case concerns only the second requirement, as there is no dispute about whether the informant is credible. For the reasons stated, we affirm the Court of Appeals' memorandum opinion which reversed the district court and held the affidavit supporting the search warrant contained sufficient facts to enable the magistrate court to find probable cause. *See State v. Perea*, A-1-CA-38407, mem. op. ¶¶ 14-15 (N.M. Ct. App. Mar. 7, 2022) (nonprecedential). We write, however, to clarify the proper reasoning.

## I.      BACKGROUND

{3}     The affidavit for search warrant in this case was submitted by an agent assigned to the Otero County Narcotics Enforcement Unit of the Alamogordo Police Department and relies on information provided by a CI. The affidavit relevantly states:

- Affiant learned from a documented confidential reliable informant, hereinafter referred to as CI, that within the last 72 hours, a quantity of Methamphetamine seen by the CI consistent with trafficking has been seen by the CI at[] 1712 North Florida Avenue, Alamogordo, Otero County, New Mexico, which is being handled by a female subject identified as [Defendant-Petitioner] Michelle Perea [(Petitioner)] . . . . CI stated [Petitioner] keeps a continuous supply of illicit narcotics at her residence and on her person[] at all times.

- The CI is reliable in that the CI has given information, which has been corroborated, and was proven to be accurate. The CI has given

information involving narcotics and houses which sell narcotics. The CI has made controlled substance buys for the Otero County Narcotics Enforcement Unit in Otero County, New Mexico.

- Affiant knows the CI is familiar with what Methamphetamine looks like, how it is packaged and sold, as the CI is an admitted past user of illicit drugs. Affiant questioning the CI carefully regarding drug trafficking and the appearance, price, use and effects of various street drugs. The CI's Answer's [sic] demonstrated extensive knowledge about street drugs, including methamphetamine.

Based on the affidavit, a magistrate judge issued a search warrant for evidence of trafficking controlled substances.

{4}    When agents executed the search warrant, they uncovered 0.5 grams of suspected methamphetamine and paraphernalia, including numerous hypodermic syringes, a digital scale, empty jeweler baggies, and several glass and plastic smoking devices in Petitioner's garage, vehicle, and on her person. Petitioner was arrested and transported to a detention center, where officers located a baggie containing another 1.4 grams of suspected methamphetamine hidden in her underwear. An indictment was subsequently filed charging Petitioner with possessing methamphetamine and drug paraphernalia.

{5}    Petitioner filed a pretrial motion to suppress, arguing the affidavit failed to demonstrate the basis of the CI's knowledge, citing purported deficiencies comparable to those identified in *State v. Belknap*, A-1-CA-35195, mem. op. ¶¶ 13-

15 (N.M. Ct. App. Mar. 6, 2017) (nonprecedential). Petitioner argued the affidavit simply recited that in the past seventy-two hours the CI saw "a quantity of methamphetamine consistent with trafficking" without "show[ing] the conditions under which the informant made his/her observations, the quantity of methamphetamine allegedly seen or how it was packaged[,] which might indicate an intent to distribute." Petitioner cited these alleged deficiencies as "the very defect" in *Belknap* that was the basis for reversal of the denial of the motion to suppress in that case. Petitioner also argued the warrant was overbroad, asserting without authority that a search warrant "should define a place to be searched rather than a person to be searched."

{6} The State responded that the affidavit established the CI had personal knowledge from first-hand observations of methamphetamine in Petitioner's home in an amount consistent with trafficking and of methamphetamine on her person. The State argued such personal knowledge constitutes "the gold standard of basis of knowledge in the law" and thus the affidavit demonstrated an adequate basis of knowledge. Regarding overbreadth, the State highlighted Petitioner's lack of authority for the assertion and argued neither the warrant nor execution of the search were improper as to create a basis for suppression.

4

**{7}** The district court granted Petitioner's motion, acknowledging the "CI's veracity or credibility" but finding the basis-of-knowledge prong was not satisfied. Specifically, the district court found the affidavit deficient under *Belknap*, because the affidavit failed to state the amount of methamphetamine or how the CI knew the quantity was "consistent with trafficking"; failed to show the conditions under which the CI made these observations, the quantity of methamphetamine allegedly seen, or how it was packaged; and failed to provide evidence that the CI had seen Petitioner make any sales of methamphetamine.[1] The State appealed.

**{8}** In reversing the district court, the Court of Appeals limited its review to determining if the affidavit sufficiently established the CI's basis-of-knowledge prong, as both parties agreed the informant-veracity prong of Rule 5-211(E)'s basis for finding probable cause was satisfied. *Perea*, A-1-CA-38407, mem. op. ¶ 6. In its analysis, the *Perea* Court reached three relevant conclusions supporting reversal. *Id.* ¶¶ 8-14.

---

[1]In its initial order granting the motion, the district court slightly misquoted the affidavit, including the phrase "seen by the CI" only once, while the affidavit used that phrase twice. The State moved for reconsideration, arguing the omission was material and improperly led the court to believe the affidavit did not assert first-hand knowledge of the CI. The court subsequently filed an amended order that was in all respects the same as its original order, though the quoted language from the affidavit was corrected.

{9} First, the Court of Appeals recognized the importance of the CI's "first-hand observation of the methamphetamine at [Petitioner's] home," in concert with the CI's familiarity and "'extensive knowledge'" regarding methamphetamine. *Id.* ¶ 8. The Court, citing three Court of Appeals cases, stated that "[i]t is well-established that first-hand observations satisfy the basis of knowledge requirement." *Id.* ¶¶ 8, 13. Under this proposition, the Court found the affidavit established a sufficient basis for the CI's knowledge. *Id.* ¶ 13.

{10} We note the *Perea* Court supported this first conclusion by purporting to correct the district court's reading of *Belknap*. As we discussed, the district court relied on that nonprecedential case in finding the affidavit here deficient for lack of additional detail regarding the basis of the CI's knowledge. Attempting to distinguish *Belknap*, the Court of Appeals stated that, because the *Belknap* informant's first-hand observation pertained to marijuana, personal observation "was inadequate to establish probable cause because marijuana at that time could be legally possessed in certain limited circumstances." *Perea*, A-1-CA-38407, mem. op. ¶ 10.

{11} In its second relevant conclusion, contrary to the district court's concerns regarding level of specificity, the *Perea* Court determined the affidavit was sufficiently specific to support a reasonable belief Petitioner was in possession of

contraband. *Perea*, A-1-CA-38407, mem. op. ¶ 12. The Court concluded that it was "not clear that such specificity is required in the circumstances present in this case" because under "a common-sense reading of the affidavit . . . the CI's visual observation supplies [a sufficient] basis of knowledge." *Id.*

{12} Third, the Court of Appeals rejected the district court's concern that the affidavit did not include the CI having seen Petitioner selling methamphetamine. *Id.* ¶ 13. Citing *State v. Ramirez*, 1980-NMCA-108, ¶¶ 3-4, 95 N.M. 202, 619 P.2d 1246, the Court of Appeals concluded that, "[w]hile this omission may diminish the value of the CI's basis of knowledge somewhat, . . . the CI's first-hand observation of [Petitioner] possessing methamphetamine was [nonetheless] sufficient to establish probable cause." *Perea*, A-1-CA-38407, mem. op. ¶ 13.

{13} Petitioner timely appealed, and we granted certiorari to determine whether the Court of Appeals erred in concluding there was a substantial basis to support a finding of probable cause for the search warrant.

**II.    DISCUSSION**

**A.    Standard of Review**

{14} This Court reviews the issuance of a search warrant under a substantial basis standard. *State v. Haidle*, 2012-NMSC-033, ¶ 10, 285 P.3d 668. Limiting our review to the four corners of the affidavit, *id.* ¶ 40, we "must determine whether the affidavit

7

as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause," *State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376.

{15} "The substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *State v. Gurule*, 2013-NMSC-025, ¶ 16, 303 P.3d 838 (brackets, internal quotation marks, and citation omitted). A reviewing court should pay "'great deference'" to the "'magistrate's determination of probable cause,'" *Williamson*, 2009-NMSC-039, ¶ 17 (quoting *Gates*, 462 U.S. at 236), and "should not substitute its judgment for that of the issuing court," *id.* ¶ 29. "When the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *State v. Price*, 2020-NMSC-014, ¶ 13, 470 P.3d 265 (internal quotation marks and citation omitted). "This deferential standard of review is appropriate to further the . . . strong preference for searches conducted pursuant to a warrant and to encourage police officers to procure a search warrant." *Gurule*, 2013-NMSC-025, ¶ 16 (omission in original) (internal quotation marks and citation omitted).

{16}     Still, "the substantial basis standard is not tantamount to rubber-stamping the decision of the issuing court and does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause." *Williamson*, 2009-NMSC-039, ¶ 30. "While we give deference to a magistrate's decision, and to an officer's observations, experience, and training, their conclusions must be objectively reasonable under all the circumstances." *Haidle*, 2012-NMSC-033, ¶ 13 (brackets, internal quotation marks, and citation omitted). The requirement for objective reasonableness is "especially important when dealing with the search of a home," the privacy of which is afforded the highest level of constitutional protection. *Id*. (internal quotation marks and citation omitted).

**B.     Analysis**

{17}     Article II, Section 10 of the New Mexico Constitution expressly directs that a warrant to search any place shall not issue "without a written showing of probable cause." In order for an affidavit for search warrant to satisfy the requirement for probable cause, the affidavit "must show: (1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be searched." *Price*, 2020-NMSC-014, ¶ 14 (internal quotation marks and citation omitted). The written showing of probable cause must be presented by the police to a neutral and detached magistrate or judge and contain sufficient detail to enable the

9

magistrate or judge to make an independent judgment on whether there is probable cause. *Cordova*, 1989-NMSC-083, ¶¶ 4-5.

{18}   In recognition of the foregoing requirements, Rule 5-211(E) requires that probable cause "shall be based on substantial evidence" and that the substantial evidence "may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Because there is no dispute the affidavit here satisfies the former "veracity" prong, we only address the latter, the "basis of knowledge" prong of the rule.

{19}   Petitioner relies on the nonprecedential memorandum opinion *Belknap* in arguing the *Perea* Court erred. Petitioner primarily suggests the Court of Appeals erred by not applying the basis-of-knowledge requirements in *Belknap*, as the affidavits in both cases lacked the same detail: "There is no description of an approximate amount, how it was packaged, or whether the CI ever observed the actual sale of methamphetamine." Petitioner also relies on these additional requirements in *Belknap* to challenge the Court of Appeals' conclusion that "the CI's first-hand knowledge, alone, is sufficient to satisfy the 'basis of knowledge' prong." Additionally, Petitioner points to the Court of Appeals' misreading of *Belknap* as relevant error: that is, the *Perea* Court did not recognize the probable cause

determination in *Belknap* was made without consideration that marijuana possession was then legal under certain circumstances.

{20} The State argues the Court of Appeals was correct in holding the affidavit satisfied the basis-of-knowledge prong. Asserting personal observations "are generally sufficient to establish a basis of knowledge," the State claims the affidavit established "the CI gathered information of [Petitioner's] illegal activity in a reliable way—through first-hand, personal observation inside [Petitioner's] home." Challenging the district court's contrary conclusion under *Belknap*, the State quotes *Cordova* for the proposition that "technical requirements of elaborate specificity have no proper place in a court's evaluation." 1989-NMSC-083, ¶ 15; *see also United States v. Ventresca*, 380 U.S. 102, 108 (1965) ("Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."). Additionally, the State argues the Court of Appeals correctly distinguished the *Belknap* affidavit from the affidavit here, pointing to marijuana possession being legal under certain circumstances whereas methamphetamine possession is categorically illegal.

{21} We hold the affidavit was sufficient to establish probable cause for the warrant issued in this case and the Court of Appeals did not err in reversing the district court. However, we also determine the Court of Appeals erred in its construal of *Belknap*

11

and in its overstatement of the sufficiency of first-hand observation in establishing the basis of knowledge. Because these errors are not fatal to the Court's otherwise correct analysis, we affirm.

**1.      The *Perea* Court's reversal of the grant of the motion to suppress comports with *Cordova* and *State v. Baca*, 1982-NMSC-016, 97 N.M. 379, 640 P.2d 485**

{22}    We analyze the *Perea* Court's memorandum opinion here to determine whether the Court erred in determining the affidavit provided probable cause for the issuing court. The crux of the Court's analysis is that the basis-of-knowledge requirement of Rule 5-211(E) can be satisfied by first-hand observations and was satisfied in this case by the CI's first-hand observation of methamphetamine at Petitioner's residence. *See Perea*, A-1-CA-38407, mem. op. ¶ 8. This analysis is sound under *Cordova* and *Baca*.

{23}    *Cordova* relevantly analyzed and applied the *Aguilar-Spinelli* basis-of-knowledge prong set forth in Rule 5-211(E). *Cordova*, 1989-NMSC-083, ¶¶ 17-25; *see id.* ¶ 6 ("Although an affidavit may be based wholly or in part on hearsay provided by an unnamed informant, 'the magistrate must be informed of *some of the underlying circumstances from which the informant concluded that the facts were as he claimed they were*.'" (emphasis added) (brackets omitted) (quoting *Aguilar*, 378 U.S. at 114)). First, citing *Aguilar*'s analysis of the insufficient affidavit in that

12

case, the *Cordova* Court illustrated that the basis-of-knowledge prong is not satisfied by mere assurances or conclusory statements. *See id.* ¶ 7 ("[T]he [*Aguilar*] Court held an affidavit to be insufficient to support a search warrant when it stated simply that 'Affiants have received reliable information from a credible person and do believe' that illegal drugs and paraphernalia were being kept at a particular residence."). This proposition is well established in our caselaw. *See id.* ¶ 23; *see also Baca*, 1982-NMSC-016, ¶ 16 ("The most that may be ascertained from the affidavit is that *the informant stated that* he had 'first hand personal knowledge' of the information he provided to the affiant. This is insufficient." (emphasis added) (citation omitted)). In contrast, the CI's first-hand observations here—"within the last 72 hours a quantity of [m]ethamphetamine seen by the CI consistent with trafficking has been seen by the CI at [Petitioner's residence]"—provide specific circumstances from which the issuing magistrate could conclude a sound factual basis for the allegations of wrongdoing in the affidavit.

{24}     Second, citing *Spinelli* and *United States v. Draper*, 358 U.S. 307 (1959), the *Cordova* Court implicitly affirmed that personal knowledge, including through first-hand observation, may be sufficient to satisfy the basis-of-knowledge prong, including where the affidavit contains "self-verifying" detail. *See Cordova*, 1989-NMSC-083, ¶ 9 ("[E]ven when an affidavit does not affirmatively state an

13

informant's basis of knowledge, it may be inferred that an informant who otherwise is known to be credible obtained the information set forth in the affidavit in a reliable fashion *if* the tip contains enough detail to be self-verifying." (citing *Spinelli*, 393 U.S. at 417)); *id.* ¶ 9 n.3 (citing *Draper*). *Cordova* illustrated self-verifying detail as "of a kind that generally would have been known only by someone intimately connected" with the wrongdoing alleged in an informant's tip. 1989-NMSC-083, ¶ 9 & n.3.

{25} As explained in *Spinelli*, such detail allows a magistrate to "know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." 393 U.S. at 416. As "a suitable benchmark," the *Spinelli* Court pointed to *Draper*, in which the informant's specificity of detail regarding the defendant's criminal scheme, appearance, and schedule created a reasonable basis for concluding that his information was based on personal knowledge. *Id.* at 416-17 ("A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way."); *see Cordova*, 1989-NMSC-083, ¶ 9 n.3 ("By analogy, the *Spinelli* Court posited that a magistrate confronted with the tip considered in *Draper* could have concluded that the tip was based on personal knowledge without an affirmative statement to that effect.").

14

{26} Importantly, *Spinelli* requires assurance that the information in an affidavit was "obtained . . . in a reliable fashion," which may be confirmed through sufficient detail establishing personal knowledge. *Cordova*, 1989-NMSC-083, ¶ 9. In other words, the detail in *Draper* confirmed the informant's claims were reliable based on his personal knowledge rather than on rumor or reputation. It follows that an issuing court may find a sufficient basis of knowledge for a search warrant when sufficient detail confirms a CI's personal knowledge. The affidavit in *Cordova* provides a contrasting example, wherein the CI provided specific detail describing a suspect from out of town, his car, and the house the suspect purportedly was visiting, but none of that detail could verify the alleged heroin possession. 1989-NMSC-083, ¶¶ 2, 24-25 ("[T]he affidavit in essence asked the magistrate to believe the informant was reliable merely because the house and car existed, and further asked the magistrate to believe that because the house and car existed, the man and the heroin probably did as well."). The *Cordova* Court accordingly held the affidavit did not establish a substantial basis of knowledge under Rule 5-211(E). *Id.* ¶ 25.

{27} As cited in *Cordova*, *Baca* supports that first-hand observation alone can constitute a substantial basis for a CI's knowledge to establish probable cause. *See id.* ¶ 9 (citing *Baca*, 1982-NMSC-016, ¶ 18 (citing *Spinelli*)). As in *Cordova*, the affidavit in *Baca* lacked detail of criminal activity to establish a basis of knowledge

for the CI's assertion that criminal activity was afoot. *Baca*, 1982-NMSC-016, ¶ 18 ("All that is stated by the informant describes innocent activity."); *id.* ¶ 19 (same) (citing *Draper*). However, in the course of its analysis, the *Baca* Court highlighted the role first-hand observation can play in satisfying the basis-of-knowledge requirement:

> In order to assist the judge in making [a probable cause] determination, it is necessary that the affidavit provide *a factual basis for the informant's personal knowledge, such as observations or dealings with the defendant.* . . . A judge cannot ascertain from a reading of the affidavit [in *Baca*] *whether the informant knows the parties named* in the affidavit, *has actually seen the defendant* carry a .32 caliber pistol, drive the Chevrolet, *or whether the informant bases his information on mere hearsay or rumor.*

*Id.* ¶¶ 16-17 (emphasis added).

{28} We read the foregoing analysis in *Cordova* and *Baca* to support the essential legal premise relied on by the Court of Appeals in this case: first-hand observation can provide substantial evidence to satisfy the basis-of-knowledge prong in Rule 5-211(E). Stated more broadly, *Cordova* and *Baca* support the proposition that a sufficient basis of knowledge for probable cause can be established through different forms of "personal knowledge, [including first-hand] observations." *Baca*, 1982-NMSC-016, ¶ 16.

{29} Applying this proposition to the facts, we determine the Court of Appeals in *Perea* did not err in concluding substantial evidence supported the magistrate court's

16

finding of probable cause. The Court of Appeals properly relied on the affidavit, which "state[d], in pertinent part, that 'within the last 72 hours, a quantity of [m]ethamphetamine *seen by the CI* consistent with trafficking has been *seen by the CI* at [a residence], which is being handled by [Petitioner]' and that '[Petitioner] keeps a continuous supply of illicit narcotics at her residence and on her person[] at all times.'" *Perea*, A-1-CA-38407, mem. op. ¶ 8 (second and third alterations in original). In combination with the CI's credibility, the affidavit identified that the CI personally observed an illegal substance, in quantities sufficient to indicate illegal activity, and therefore provided sufficient factual detail from which the magistrate court could reasonably infer "probable cause to believe that a search [would] uncover evidence of wrongdoing." *Williamson*, 2009-NMSC-039, ¶ 29; *see id.* ¶ 17 ("[T]he Fourth Amendment [to the United States Constitution] requires no more.").

{30} Additionally, our recognition of the potential sufficiency of first-hand observation in basis-of-knowledge analysis under Rule 5-211(E) comports with relevant interests articulated in our probable cause jurisprudence. As *Cordova* recited,

> [O]n issues of probable cause to support a warrant: "(1) only a probability of criminal conduct need be shown; (2) there need be less vigorous proof than the rules of evidence require to determine guilt of an offense; (3) common sense should control; and (4) great deference should be shown by courts to a magistrate's determination of probable cause."

17

1989-NMSC-083, ¶ 15 (citation omitted). We have also quoted the United States Supreme Court regarding the "'practical and not abstract'" requirements of the Fourth Amendment for affidavits to show probable cause in support of a search warrant, which are equally relevant to Article II, Section 10: "'[A]ffidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. . . . A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.'" *State v. Snedeker*, 1982-NMSC-085, ¶ 23, 99 N.M. 286, 657 P.2d 613 (second omission in original) (quoting *Ventresca*, 380 U.S. at 108); *cf. Gurule*, 2013-NMSC-025, ¶ 16 ("In situations that present doubtful or marginal cases of probable cause, the reviewing court should resolve the issue by giving preference to the warrant."). The foregoing demonstrates, contrary to the dissent's concluding assertions, that the affidavit here "contain[ed] sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause." *Cordova*, 1989-NMSC-083, ¶ 5.

{31} The dissent, while conceding the CI's first-hand observations established a sufficient basis of knowledge for *possession* of methamphetamine, asserts the affidavit is nonetheless insufficient to establish probable cause because law enforcement sought a search warrant for *trafficking*. This position ignores the

standard articulated in *Williamson* and *Gates* requiring that the issuing "'magistrate had a substantial basis for concluding that a search would uncover evidence of *wrongdoing*,'" not of a particular crime. *Williamson*, 2009-NMSC-039, ¶ 17 (emphasis added) (ellipsis and brackets omitted) (quoting *Gates*, 462 U.S. at 236). Despite the dissent's insistence that we must reach the issue of the affidavit's sufficiency as to trafficking, "'the Fourth Amendment requires no more'" than such evidence of wrongdoing. *Id.* (quoting *Gates*, 462 U.S. at 236). To be clear, because the affidavit provides a sufficient basis of knowledge for concluding a search would uncover evidence of a crime—in this case, possession of methamphetamine—we need not analyze whether the affidavit also provided a basis of knowledge for an additional crime. Because the dissent misstates our holding—characterizing that "probable cause for crime X automatically equates to probable cause for crime Y"— we reiterate that our review of the issuing court's judgment does not reach the issue of whether the affidavit satisfies the basis-of-knowledge prong for trafficking.

{32} Invoking the New Mexico Constitution, the dissent cites inapposite and nonbinding cases to suggest that the affidavit's purported failure as to trafficking renders the warrant unconstitutional. However, none of the cited precedential cases address a situation on point to the dissent's implicit assertion here—that an affidavit is unconstitutional when insufficiently particular for a *broader* claim of wrongdoing

while sufficiently particular for a *narrower* and obviously included claim of wrongdoing. *See Haidle*, 2012-NMSC-033, ¶ 36 (concerning a search warrant seeking evidence "of a murder"); *Williamson*, 2009-NMSC-039, ¶ 35 (concerning a search warrant for a package suspected to contain illegal narcotics); *see also State v. Sabeerin*, 2014-NMCA-110, ¶ 26, 336 P.3d 990 (ruling an affidavit insufficiently particular in seeking "*any and all evidence which may lead investigators to the offender(s) and or possible witnesses in this case*"); *State v. Jones*, 1988-NMCA-058, ¶ 7, 107 N.M. 503, 760 P.2d 796 (ruling an affidavit provided probable cause for seizure of defendant's business records as evidence of receiving stolen property). To highlight the distinction, we reiterate the obvious here: as presented through the CI's first-hand observations, the affidavit's claims regarding trafficking necessarily included possession of methamphetamine, which substance was specified among the items to be seized and searched for under the warrant.[2]

{33}    The dissent further cites *Gurule*, 2013-NMSC-025, ¶ 15, and *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013), to support that, "because the agent in this case was seeking a search warrant for *trafficking*, the warrant had to show

---

[2]Regarding methamphetamine being a specified item to be seized and searched for under the warrant, the dissent raises an overbreadth argument that we note was never raised by the parties.

probable cause for *trafficking*." *Dissent* ¶¶ 54-55. However, the cited paragraph in *Gurule* quotes a treatise, not our constitution, and says nothing supporting the dissent's heightened requirement. To the contrary, the affidavit here satisfies *Gurule* by establishing a "nexus" between *criminal activity* of methamphetamine possession, *things to be seized* including methamphetamine, and *the place to be searched* of Petitioner's residence, all directly supported by the CI's first-hand observations. *See Gurule*, 2013-NMSC-025, ¶ 15. As for *Galpin*, the Second Circuit stated that "a warrant must identify the specific offense for which the police have established probable cause" as a component of preventing "[t]he chief evil that prompted the framing and adoption of the Fourth Amendment": "indiscriminate searches and seizures." 720 F.3d at 445 (internal quotation marks and citation omitted). To illustrate the value of this component, the *Galpin* Court cited cases wherein a warrant "made no mention of any criminal statute or criminal conduct" and an overbroad warrant simply sought "evidence relating to the commission of a crime." *Id.* (internal quotation marks and citation omitted). In contrast here, the affidavit established a basis of criminal activity that was sufficiently particular—including methamphetamine to be seized—to assuage *Galpin*'s concern regarding general and indiscriminate searches. Contrary to the dissent's suggestion, these cases do not demonstrate that our constitution requires a neutral and detached magistrate

21

to ignore sufficient evidence for probable cause of methamphetamine possession in an affidavit seeking a warrant for methamphetamine trafficking.

{34} Because here "the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause," we consider the dissent's heightened standard to "interpret[] the affidavit in a hypertechnical, rather than a commonsense, manner," as prohibited by *Price*, 2020-NMSC-014, ¶ 13 (internal quotation marks and citation omitted). Under a commonsense reading of the affidavit, the CI's first-hand observations established sufficient detail of personal knowledge to support the magistrate's determination of probable cause. Accordingly, we affirm the Court of Appeals in reversing the district court.

**2. The *Perea* Court's overstatement regarding first-hand observation does not render its ruling infirm**

{35} Notwithstanding our holding, we note the Court of Appeals presented its legal premise, which we have just discussed, in terms that suggest a categorical rule: "It is well-established that first-hand observations satisfy the basis of knowledge requirement." *Perea*, A-1-CA-38407, mem. op. ¶ 8. While the CI's first-hand observations were sufficient here, we clarify that neither our affirmance nor the cases cited by the Court of Appeals in this context should be read to support that such observations always or automatically satisfy the basis-of-knowledge prong.

{36} The Court of Appeals in *Perea* cited its own precedent as relevant support. *Id.* ¶¶ 8, 13 (citing *State v. Barker*, 1992-NMCA-117, ¶ 5, 114 N.M. 589, 844 P.2d 839; *State v. Lujan*, 1998-NMCA-032, ¶ 12, 124 N.M. 494, 953 P.2d 29; *Ramirez*, 1980-NMCA-108, ¶¶ 3-4). In *Barker*, the Court of Appeals considered an affidavit stating the CI "while at this residence did observe first hand the defendant selling marihuana" and otherwise "witnessed drugs being sold at that location." 1992-NMCA-117, ¶ 2. The *Barker* Court concluded the affidavit contained an adequate basis of knowledge to support the search warrant, stating, "First-hand observations by the informant serve to meet the 'basis of knowledge' prong of the *Cordova* test." *Id.* ¶ 5 (citation omitted). Similarly in *Lujan*, the Court of Appeals determined, under "a common-sense reading of the affidavit," that the CI's description of the controlled buy therein included critical facts either seen by the CI or corroborated by the affiant police officer, facts from which the issuing court could "infer sufficient first-hand knowledge." 1998-NMCA-032, ¶ 12 ("[T]he informant entered the residence with some money and no drugs and came out of the residence a few minutes later with drugs and no money."). Similarly in *Ramirez*, the Court of Appeals found the affidavit there satisfied the basis-of-knowledge prong through the CI's "personal observation" of the defendant being in possession of heroin. 1980-NMCA-108, ¶ 4

23

("The statement in the affidavit that the informant saw the defendant in possession of heroin was sufficient to satisfy the first prong of the *Aguilar* test.").

{37}    We approve the use of first-hand-observation evidence in these cases in analyzing the basis-of-knowledge requirement in Rule 5-211(E). We reiterate, however, that they do not establish a per se rule, as "[t]here are no 'bright-line, hard-and-fast rules' for determining probable cause." *State v. Evans*, 2009-NMSC-027, ¶ 11, 146 N.M. 319, 210 P.3d 216 (citation omitted); *see, e.g.*, *State v. Whitley*, 1999-NMCA-155, ¶ 3, 128 N.M. 403, 993 P.2d 117 (concluding, notwithstanding first-hand-observation evidence, that "the affidavit did not contain sufficient information of ongoing criminal activities and the information was therefore stale"). To the contrary, we have clearly expressed above our recognition of the *potential* sufficiency of personal knowledge of wrongdoing, including through first-hand observation, in basis-of-knowledge analysis.

**3.    The *Perea* Court's misreading of *Belknap* does not render its ruling infirm**

{38}    Attempting to distinguish *Belknap*, the *Perea* Court stated that, because the *Belknap* informant's first-hand observation pertained to marijuana, that observation "was inadequate to establish probable cause because marijuana at that time could be legally possessed in certain limited circumstances." *Perea*, A-1-CA-38407, mem. op. ¶ 10. The *Perea* Court attempted to establish a contrast here, noting "mere

24

possession of methamphetamine is categorically prohibited in New Mexico." *Id.* ¶ 11. However, the *Belknap* Court made clear its probable cause analysis was made without regard to the materiality of defendant's valid medical marijuana card registration, the basis in 2017 under which marijuana possession could be legal. *See Belknap*, A-1-CA-35195, mem. op. ¶¶ 7, 16.

{39} Petitioner attempts to cast this error as a basis for reversal, suggesting the *Perea* Court's analysis additionally erred in not meeting the legal standard set by *Belknap*. This argument does not avail.

{40} First, *Belknap* is a nonprecedential memorandum opinion. Accordingly, the district court and the Court of Appeals were not bound by its reasoning and need not have distinguished it in evaluating the affidavit at issue here. *See* Rule 12-405(A) NMRA; *N.M. Uninsured Emps.' Fund v. Gallegos*, 2017-NMCA-044, ¶ 18 n.3, 395 P.3d 533 (stating that "unpublished memorandum opinions are not controlling authority, and we need not distinguish nonprecedential cases").

{41} Second, the *Perea* Court's misreading of *Belknap* was not part of the Court's analysis underlying its holding. Instead, the *Perea* Court attempted to distinguish that case merely in the course of refuting Petitioner's misplaced use of *Belknap* as legal authority. *See Perea*, A-1-CA-38407, mem. op. ¶¶ 9-11 ("[I]n this case, it was not necessary to demonstrate probable cause to believe [Petitioner] was engaged in

25

the distribution of methamphetamine; possession was enough."). We also note that Petitioner, while attempting to tether the proposition of *Belknap* to *Cordova* and *Baca*, does not actually cite those precedential cases as requiring detail of wrongdoing beyond first-hand observation. As we have established to the contrary, *Cordova* and *Baca* support affirmance here. Consequently, Petitioner relies on *Belknap* alone for this argument, which does not avail.

{42} In sum, the Court of Appeals' misreading of *Belknap* is not fatal to its holding.

**III. CONCLUSION**

{43} For the reasons given, the Court of Appeals' reversal of the district court's grant of the motion to suppress is affirmed.

{44} **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**

_____
**BRIANA H. ZAMORA, Justice**

_____
**CINDY LEOS, Judge**
**Sitting by designation**

**MICHAEL E. VIGIL, Justice, dissenting**

**VIGIL, Justice (dissenting).**

{45}    Probable cause must be "based on substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Rule 5-211(E) NMRA. Our rule codifies the requirements of *Aguilar v. State of Texas*, 378 U.S. 108 (1964) (*abrogated by Illinois v. Gates*, 462 U.S. 213, 238 (1983)), and *Spinelli v. United States*, 393 U.S. 410 (1969) (same abrogation), which are constitutionally required for a valid search warrant under Article II, Section 10 of the New Mexico Constitution. *State v. Cordova*, 1989-NMSC-083, ¶¶ 3, 17, 109 N.M. 211, 784 P.2d 30 (adopting, as a matter of state constitutional law, the *Aguilar-Spinelli* confidential informant test).

{46}    The affidavit in this case, which secured a search warrant for trafficking, recites that the agent learned from the confidential informant (CI) "that within the last 72 hours, a quantity of Methamphetamine seen by the CI *consistent with trafficking* has been seen by the CI" at a home "which is being handled by [Defendant-Petitioner Michelle Perea]." (Emphasis added.) The majority holds this satisfies the probable cause requirements under Article II, Section 10 of the New Mexico Constitution. I disagree and, therefore, dissent.

28

{47} The majority overlooks that the affidavit merely sets forth a *conclusion* or *opinion* that the quantity of methamphetamine the CI saw is "consistent with trafficking." More than this is constitutionally required. *Cordova*, 1989-NMSC-083, ¶ 6 (affirming that the affidavit must contain "sufficient detail" for the issuing judge to make an independent determination of probable cause); *see State v. Lujan*, 1998-NMCA-032, ¶¶ 2, 9, 124 N.M. 494, 953 P.2d 29 (stating the magistrate "would have been correct to deny" the issuance of a warrant based on a CI's statement that an individual was "trafficking in heroin" at the described premises had there been no controlled buy of heroin by the CI). The affidavit here is totally devoid of any *facts* whatsoever to establish a substantial basis for believing that "a quantity of [m]ethamphetamine . . . *consistent with trafficking*" was seen by the CI within the past seventy-two hours. The CI's conclusion or opinion is not supported by stating any of the conditions under which the CI saw methamphetamine, the circumstances in which the methamphetamine was seen, the amount of methamphetamine, how the methamphetamine was packaged, if at all, whether there was any paraphernalia used in the packaging and sale of methamphetamine, what the CI saw to say that the methamphetamine was "being handled" by Petitioner, or any other details. Moreover, the affidavit is not even clear on whose conclusion or opinion is being expressed. It could be the affiant's, based on what the CI told them they saw, or it

29

could be the CI's own conclusion or opinion. We just do not know because the affidavit does not tell us.

**{48}** The affidavit adds that the "Affiant knows the CI is familiar with what [m]ethamphetamine looks like [and] how it is packaged and sold." Even assuming this familiarity, however, it adds nothing to the bald *conclusion* or *opinion* that there is trafficking of methamphetamine *without any supporting facts*. This completely fails to satisfy what our constitution requires. *See Cordova*, 1989-NMSC-083, ¶¶ 21-22 (stating that the magistrate was presented with nothing more than a bald, unsupported conclusion, lacking any detail). Moreover, the factually unsupported assertion by the CI set forth in the affidavit that Petitioner "keeps a continuous supply of illicit narcotics at her residence and on her persons at all times" is clearly entitled to no weight in establishing probable cause. *See id.* ¶ 22.

**{49}** I agree that the CI's observation of Petitioner in possession of methamphetamine at the house noted is sufficient to support a search warrant for *possession*. But that is not what happened here. The affidavit asked for a search warrant for *trafficking*. These are separate crimes with differing elements and

30

penalties.[3] The affidavit attempts to set forth probable cause to believe Petitioner was in possession of methamphetamine with an intent to distribute it, which is one way to commit trafficking. NMSA 1978, § 30-31-20(A)(3) (2006). However, it is well-settled that the illegal possession of methamphetamine alone is insufficient for trafficking. *State v. Moreno*, 1961-NMSC-070, ¶ 2, 69 N.M. 113, 364 P.2d 594. The amount possessed must be inconsistent with personal use. *State v. Becerra*, 1991-NMCA-090, ¶¶ 22-23, 112 N.M. 604, 817 P.2d 1246. In recognition of these requirements, the affidavit states that the quantity of methamphetamine seen by the CI is "consistent with trafficking." The affidavit establishes that the CI saw a quantity of methamphetamine, but the assertion that the quantity is "consistent with trafficking" has no factual support whatsoever. It is nothing more than the CI's bald, factually unsupported *conclusion* or *opinion*. And it fails to satisfy the constitutional requirement for a search warrant to be issued under the New Mexico Constitution as required by Rule 5-211(E).

---

[3]Possession of methamphetamine is a fourth-degree felony with a penalty of eighteen months imprisonment, and trafficking methamphetamine is a second-degree felony with a penalty of nine years imprisonment. NMSA 1978, § 30-31-23(E) (2011) (controlled substances; possession prohibited); NMSA 1978, § 30-31-20(B)(1) (2006) (trafficking controlled substances; violation); NMSA 1978, § 31-18-15 (2016) (sentencing authority; noncapital felonies).

31

{50} I am not talking about a mere technicality but conformance with the New Mexico Constitution. Our constitution is specific in directing, "no warrant to search any place, or seize any . . . thing, shall issue without describing the . . . things to be seized, nor without a written showing of probable cause." N.M. Const. art. II, § 10. The Fourth Amendment to the United States Constitution similarly directs, "no [w]arrants shall issue, but upon probable cause . . . particularly describing . . . the things to be seized." I begin with the requirement that a warrant must describe the things to be seized—the "particularity requirement" of both constitutions.

{51} The purpose of the particularity requirement is to make general searches impossible. "The problem posed by the general warrant is not that of intrusion Per se, but of a general, exploratory rummaging of a person's belongings. The Fourth Amendment addresses the problem by requiring a particular description of the things to be seized." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (brackets, ellipsis, internal quotation marks, and citation omitted). The same purpose is served under the New Mexico Constitution. *State v. Hamilton*, 2012-NMCA-115, ¶ 13, 290 P.3d 271 ("A valid search warrant must state with particularity . . . the things to be seized."). There is no debate on this point.

{52} However, the question remains: What principle determines the particular things that a search warrant may constitutionally authorize the police to seize? The

32

answer lies in the *scope of probable cause* established in the affidavit for the search warrant. *Maryland v. Garrison* explains: "The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific . . . things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." 480 U.S. 79, 84 (1987); *see Andresen*, 427 U.S. at 480 n.10 (declaring that the particularity requirement is satisfied "when the State has demonstrated probable cause to believe that *a crime* has been committed and probable cause to believe that evidence of *this crime* is in the suspect's possession" (emphasis added)).

{53}     This principle—that a search must be confined in scope for evidence related to the specific crime for which the affidavit demonstrates probable cause—is required by the New Mexico Constitution. *State v. Haidle*, 2012-NMSC-033, ¶ 36, 285 P.3d 668 (concluding that the "nonhearsay content of the affidavit" for a search warrant "fails to provide the substantial evidence required for the magistrate to find probable cause that evidence of a murder was located in [the d]efendant's home"); *State v. Williamson*, 2009-NMSC-039, ¶ 35, 146 N.M. 488, 212 P.3d 376 (affirming an issuing court's finding of probable cause because the facts alleged in the affidavit for search warrant were sufficient "to support a reasonable inference that the package

33

contained illegal narcotics"); *State v. Sabeerin*, 2014-NMCA-110, ¶ 26, 336 P.3d 990 (requiring the search warrant to be confined to the crime for which probable cause is demonstrated); *State v. Jones*, 1988-NMCA-058, ¶ 7, 107 N.M. 503, 760 P.2d 796 ("[T]he affidavit provided probable cause to believe defendant had committed the crime of receiving stolen property."); *see also State v. Van Osdol*, 417 P.3d 488, 492 (Or. Ct. App. 2018) ("The facts of the affidavit must therefore establish a nexus between three things: (1) that *a crime* has been, or is currently being, committed, and that (2) evidence of *that crime* (3) will be found in the place to be searched." (emphasis added)); *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) ("The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to *a specific crime for which there is demonstrated probable cause*." (emphasis added)).

{54}    In recognition of the foregoing requirements, it is well established that within the four corners of the affidavit, "there must be a sufficient nexus between (1) the criminal activity, and (2) the things to be seized, and (3) the place to be searched." *State v. Gurule*, 2013-NMSC-025, ¶ 15, 303 P.3d 838 (internal quotation marks and citation omitted). One court succinctly describes the required nexus this way: "First, a warrant must identify the *specific offense* for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the

warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (emphasis added) (footnote omitted) (internal quotation marks and citations omitted).

{55} In other words, because the agent in this case was seeking a search warrant for *trafficking*, the warrant had to show probable cause for *trafficking*. Probable cause for *possession* alone does not equate to probable cause for *trafficking*. *See State v. Nyce*, 2006-NMSC-026, ¶ 19, 139 N.M. 647, 137 P.3d 587 ("When officers believe controlled substances are being manufactured in a residence, there must be a sufficient nexus in the affidavit between the activities observed and the officers' belief that manufacture is occurring at that home."), *limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29 & n.1. The majority concludes, without citing any authority on point, that probable cause for possession *by itself* equates to probable cause to search for evidence of trafficking. For me to agree with this conclusion, I would have to ignore the foregoing points and authorities.

{56} The majority suggests that because the CI saw an unspecified quantity of methamphetamine at Petitioner's home in the past seventy-two hours, and the warrant authorized the seizure of methamphetamine, it is not overly broad. *Maj. op.* ¶¶ 29-33. This overlooks what else the warrant authorized the police to seize. The search warrant authorized the officers to search for and seize "any drug or substance

35

listed in the New Mexico Controlled Substance act"; virtually any and all evidence that is actually or potentially drug paraphernalia; any items used for "distribution or manufacturing of illicit substances"; any and all evidence "indicating past sales of narcotics"; safes, lockboxes, computers, and electronic storage media showing evidence of "use, possession or distribution of controlled substances"; any and all firearms; any and all vehicles; property suspected or verified to be stolen; and all telephones, pagers, and cellular telephones, as well as answering any calls on those devices seized while executing the warrant and previewing at the scene all caller information, text messages, and incoming and outgoing caller information. The excessive scope, based solely on possession of an unknown quantity of methamphetamine, is startling. Again, to establish probable cause that methamphetamine is in a home does not by itself establish probable cause that trafficking is being conducted from that home.

{57} Finally, I come to my last point. Article II, Section 10 of the New Mexico Constitution strongly favors the warrant process, which "requires law enforcement officials to make a showing of probable cause before a neutral and detached magistrate in order to obtain a search warrant." *Cordova*, 1989-NMSC-083, ¶ 4 (internal quotation marks and citation omitted). The point of this requirement and the protection it affords "is not [to deny] law enforcement the support of the usual

36

inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Aguilar*, 378 U.S. at 111 (internal quotation marks and citation omitted); *Cordova*, 1989-NMSC-083, ¶ 4 (quoting and adopting this language as applied to Article II, Section 10 of the New Mexico Constitution). This constitutionally mandated role of judges "requires them to make an informed and deliberate determination whether probable cause exists. Accordingly, when an application for a search warrant is based on an affidavit, the affidavit must contain *sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause*." *Cordova*, 1989-NMSC-083, ¶ 5 (emphasis added) (internal quotation marks and citations omitted).

{58}     The majority holds that probable cause for crime X automatically equates to probable cause for crime Y. Therefore, a warrant which allows for the search and seizure of evidence for Crime Y, for which there is admittedly no probable cause, is valid under the Fourth Amendment and the New Mexico Constitution. This is a startling conclusion to me, and, in my opinion, not consistent with either the Fourth Amendment or the New Mexico Constitution. New Mexico adopted and continued to follow the *Aguilar-Spinelli* requirements to provide greater protections than those

37

afforded under the Fourth Amendment. I am afraid the holding in this case goes in the opposite direction.

{59}    In addition, the majority opinion holds that the unsubstantiated, unsupported *conclusion* or *opinion* of an unnamed informant to replace the informed judgment of an independent judge in deciding whether the quantity of methamphetamine that the informant saw is "consistent with trafficking." All the issuing judge needs to do is rubber stamp the unnamed confidential informant's conclusion or opinion, and that is sufficient.

{60}    I do not agree that either result is permissible under the New Mexico Constitution. I therefore dissent.

_____

**MICHAEL E. VIGIL, Justice**